### PECK v. BURDICK & SON.

(Supreme Court, Appellate Division, Third Department. March 3, 1915.)

INSANE PERSONS (§ 97*)—EVIDENCE OF INSANITY—PLEADING AND PROOFS.

A complaint for injuries to an employé, alleging that plaintiff's ward became permanently incompetent, causing her confinement in the Hudson River State Hospital, is sufficient to let in evidence of insanity, and hence a basis of a hypothetical question to an expert witness, in view of Code Civ. Proc. § 519, providing that the allegations of a pleading must be liberally construed.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 169–171; Dec. Dig. § 97.*]

Woodward, J., dissenting.

Appeal from Trial Term, Rensselaer County.

Action by Sarah A. Peck, as committee of Flora Bell Peck, an incompetent, against Burdick & Son. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Louis F. O'Neill, of Albany, for appellant.
John J. Scully, of Albany, for respondent.

HOWARD, J. The ruling of the trial court upon a hypothetical question asked by the plaintiff presents the only subject for our consideration in this case.

The plaintiff's ward, Flora Bell Peck, was a girl 18 years of age. She was employed in the factory of the defendant, and operated what is known as a stub-driving machine. The foot lever, by which the machine was operated, slipped off the rod to which it was fastened, and struck Miss Peck on the instep of her left foot, inflicting the injuries of which she complains. Among other allegations in the complaint we find, in the fifth paragraph, the following:

" * * * Which injury plaintiff believes to be permanent, and causing her to suffer greatly from shock, humiliation, and anguish as a result of said injuries, and also causing her to suffer from a permanent nervous disorder, known as neurasthenia, and preventing her permanently from performing her usual work or occupation, and rendering her permanently incompetent, and causing her confinement in the Hudson River State Hospital. That as a result of said accident the said incompetent * * * will never again be able to use her reasoning."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The original hypothetical question which is attacked by the defendant reads as follows:

"Assuming that the girl is 18 years of age, and had been in good health, and that she then suffered an accident to her foot, which caused the same to be swollen and red, and a month after such accident she became quite irritable, and suffered from delusions, and was finally sent to the insane asylum, state whether or not, in your opinion, this accident to the girl would cause such a state of facts."

This question was modified by the court as follows:

"The Court: He may testify as to whether or not these physical injuries caused, in his opinion, her mind to be affected."

Over the objection of the defendant, the question as modified was permitted, and the doctor testified that the injuries, in his opinion, did cause Miss Peck to suffer from "primary confusional insanity."

The objection to this question is based upon the contention that insanity was not alleged in the complaint as one of the results of the injury to Miss Peck. If insanity was pleaded, there can be no doubt that the question was competent and proper, and that the ruling of the trial court was correct. Section 519 of the Code commands that "the allegations of a pleading must be liberally construed." Therefore, in trying to determine whether insanity was alleged in the complaint we should not, of course, pick at technicalities. The word "insanity" is not used in the complaint. The injury, however, is alleged to have rendered Miss Peck "permanently incompetent and causing her confinement in the Hudson River State Hospital." Therefore we find that the complaint alleges that Miss Peck has been rendered incompetent and confined in an institution for the insane. Section 40 of the Insanity Law (Consol. Laws, c. 27) makes the Hudson River State Hospital an institution for the care and treatment of insane persons. No class of incompetent persons, except those rendered incompetent by insanity, are eligible for admission and treatment at the Hudson River State Hospital. Of course a sane person would not be committed to an insane asylum. Therefore, when the plaintiff alleged that her ward had been rendered incompetent by the injury, and had been confined in an insane asylum as a result of her injury, it was equivalent to alleging that she had been rendered insane by the injury, necessitating her confinement in an asylum. It will also be noted that the plaintiff in this case sues as an incompetent person, through the committee of her person and estate. Hence it is perfectly apparent, not only that Miss Peck has pleaded insanity as a result of her injuries, but that she comes into court as an insane person, thereby fully apprising the defendant of her malady, and of her mental incapacity as a result of her injuries.

Our attention has been called in the brief of the defendant to several leading authorities holding that the plaintiff cannot plead particular effects of the injuries sustained, and then come into court and attempt to prove other effects. This rule is undoubtedly well established by a great number of well-considered cases; but it has no application here. Under the pleadings, the issue as to whether this woman was made insane as a result of her injuries was clearly tendered. The question of insanity being one of the issues before the court, the

plaintiff had a right to establish her contention by the hypothetical question under consideration.

The judgment and order appealed from should be affirmed, with costs. All concur, except WOODWARD, J., who dissents, on the ground that the verdict is against the weight of the evidence and that no foundation was laid for the hypothetical question.